## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **CENTER FOR ADVANCED SURGICAL TREATMENT, LLC,** *Plaintiff* | § § § § § § § | |
| | § | **4:16-cv-1919** |
| **vs.** | § § § § | **CIVIL CASE NUMBER** |
| **DPWN HOLDINGS USA, INC., DHL EXPRESS USA, INC., DHL WORLDWIDE EXPRESS HEALTH PLAN, and ROBERT WHITAKER** *Defendants* | § § § § § § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, CENTER FOR ADVANCED SURGICAL TREATMENT, LLC, (hereinafter, "Plaintiff") files this its Original Complaint against Defendants, DPWN HOLDINGS USA, INC., DHL EXPRESS USA, INC., DHL WORLDWIDE EXPRESS HEALTH PLAN, and ROBERT WHITAKER (hereinafter, collectively, "Defendants") and would show the following:

### I. PARTIES

1.      Plaintiff, Center for Advanced Surgical Treatment, LLC is a Texas limited liability company that operates an ambulatory surgery center located in Richmond, Texas. Plaintiff is headquartered in the city of Richmond in Fort Bend County, Texas. Plaintiff is the lawful Assignee and Claimant of the claims asserted herein.

2.      Defendant, DPWN Holdings USA, Inc. (hereinafter, "DPWN") is a subsidiary of Deutsche Post AG, a German multinational corporation, with its headquarters located in

Plantation, Florida. DPWN is a company offering mail and logistics services to business and private customers worldwide. Through its subsidiaries, DPWN employs over 300,000 individuals worldwide, many of whom are residents of the greater Houston area. The worldwide administrative office for DPWN is located at 2700 South Commerce Parkway, 3rd Floor, Weston, Florida 33331.

3.    During all material times, DPWN acted as the Plan Sponsor and Plan Administrator for Defendant DHL Worldwide Express Health Plan (hereinafter, "the Plan"). DPWN may be served by serving its Director, President, and Treasurer, Robert Whitaker, at 1210 South Pine Island Road, 1st Floor Legal Department, Plantation, Florida 33324.

4.    DHL Express USA, Inc., (hereinafter, "DHL") is a subsidiary of DPWN providing international express mail services.  DHL's Americas headquarters is located at 2799 South Commerce Parkway, 3rd Floor, Weston, Florida 33331.  DHL may be served by serving its Director and Treasurer, Robert Whitaker, at 1210 South Pine Island Road, 1st Floor Legal Department, Plantation, Florida 33324.

5. DPWN and DHL appointed their employee and agent, Defendant Robert Whitaker, as the Plan's official Plan Administrator, by and through his position as the Plan Administrator, Director, and Treasurer for DPWN and DHL. Defendant Robert Whitaker works in Weston, Florida and may be personally served at his usual place of business, at 2700 South Commerce Parkway, 3rd Floor, Weston, Florida 33331.

6. The DHL Worldwide Express Health Plan is a self-insured welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"). The Plan may be served with process by serving its Plan Administrator, Robert Whitaker or DPWN Holdings USA, Inc. at 1210 South Pine Island Road, 1st Floor Legal Department,

Plantation, Florida 33324.

## II. JURISDICTION AND VENUE

7.     Plaintiff's claims arise in part under 29 U.S.C. §§1001 et seq., ERISA, and asserts Subject Matter Jurisdiction under 28 U.S.C. §1331 (Federal Question Jurisdiction), 29 U.S.C. §1132(e) (giving Federal Court Original Jurisdiction), and 29 USC 1132(a)(1)(B).

8.     Venue is appropriate in the Southern District of Texas under 28 U.S.C. §1391(b) because DPWN and DHL conduct a substantial amount of business in this District, and employ and provide benefits to residents of this District. Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this District, such as: the collection and contributions of premiums for the Plan, the making of promises and representation as to covered medical benefits to a Plan Beneficiary (who also works and resides in this District), the provisions of health care services to a Plan Beneficiary, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plan, the exchange of correspondence relating to those claim appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of Plan funds.

## III. INTRODUCTION

9.     Plaintiff asserts claims arising out of ERISA as well as applicable State law.

10.     This dispute arises out of Defendants' numerous ERISA violations stemming from a failure by Defendants to properly pay healthcare benefits and a probable scheme to withhold, embezzle, and convert ERISA plan assets through a pattern of fraudulent benefits transactions and prohibited self-dealing misconduct.  Rather than protect the Plan's funds or

3

otherwise ensure prompt payment of health claims submitted by the Plan's beneficiaries, as they are statutorily obligated to do, in breach of their fiduciary duties, Defendants assisted, encouraged, and colluded with Cigna, their agent and co-fiduciary, to engage in statutorily prohibited transfers of plan funds deceptively masked through falsified benefits transactions.

11. Specifically, in spite of the glaring conflict of interest and inherent breach of fiduciary duties, Defendants agreed to an unlawful compensation structure that financially rewards Cigna for wrongfully denying and underpaying benefits claims. Under this backdrop, together Defendants and Cigna concocted an intricate scheme to transfer and embezzle plan funds. Transfers are first concealed by processing out-of-network claims through "Payor Initiated Discounts" and under a fabricated Preferred Provider Organization (PPO) "contractual obligations," even though Defendants and Cigna are fully aware that no such contract exists. Then, Defendants and Cigna knowingly implemented a system to willfully and wrongfully refuse payments to the out-of-network provider under a "fee-forgiveness" protocol and attempted inducements by third parties. Through various third parties, Cigna and Defendants falsely represent that claims have been processed at a very low amount in an attempt to fraudulently induce beneficiaries into signing agreements which greatly reduce their rights to benefits otherwise owed. As a result of the wrongful claims denials and sham agreements with third parties, the transferred plan funds are ultimately misappropriated by Cigna, who then pays itself with the plan funds, falsely declaring the embezzled funds as compensation generated through managed care and out- of-network cost containment "savings," when in truth the claims were never paid and the plan beneficiaries were left exposed to personal liability for their unpaid medical bills.

12. At the heart of this action is Defendants' wholesale failure to uphold their statutory

PLAINTIFF'S ORIGINAL COMPLAINT

fiduciary duties owed to beneficiaries of the Plan.  That is, in direct violation of their statutory fiduciary duties, Defendants knowingly entered into an unlawful agreement with their co-fiduciary Cigna that blatantly ignores, overlooks, and even directly creates prohibited conflicts of interest, permitting Cigna to withhold and claim as compensation to itself amounts Cigna declares as "savings" to the Plan, "savings" that are, in truth, generated by wrongfully denying valid benefits claims or fraudulently inducing beneficiaries to sign agreements that prevent them from obtaining benefits they are otherwise owed.  Thus, despite a clear, statutory bar to this type of prohibited, self-dealing transaction, Defendants agreed to a compensation structure that financially rewards Cigna for wrongfully denying even valid benefits claims – resulting in an arrangement where Cigna, a co-fiduciary, reprehensively competes with the Plan's own beneficiaries for entitlement to plan funds.  Even more, the amounts Cigna pays to itself are excessive and fundamentally unfair.

13.     Despite actual knowledge of Cigna's self-dealing misconduct stemming from repeated alerts and warnings from Plaintiff's official ERISA Appeals, Defendants systematically refused to take corrective action, and instead, delegated investigation of the suspected wrongdoing to Cigna – the identified perpetrator of the misconduct.    Further, Defendants continued to promote, enable, authorize, and ratify Cigna's wrongful misappropriation of plan funds at the direct expense of the Plan's beneficary.  Defendants violated their statutory fiduciary (and co-fiduciary) duties by promoting, encouraging, authorizing, assisting, and enabling Cigna, their designated agent and co-fiduciary, to unjustly enrich itself through an intricate embezzlement scheme that inflated Cigna's reported "savings" to the Plan, which Cigna in turn paid to itself as resulting from its "out-of-network cost containment" efforts.

14.     The overall harm caused by this scheme spans universally, as it has likely caused

misleading and inaccurate tax filings reported to the U.S. Department of Treasury, Internal Revenue Service, and Department of Labor Pension and Welfare Benefits Administration. Despite Plaintiff's efforts to alert Defendants of suspected errors and inaccuracies in their filings (such as inflated non-taxable benefits payments amounts believed to include plan funds retained by Cigna as a form of compensation) were wholly ignored and Defendants refused to act.

15.     Instead of paying the valid benefits claim submitted by the Plan's participant and beneficiary, Defendants breached their statutory fiduciary duties and knowingly encouraged, enabled, assisted, and colluded with their agent and co-fiduciary Cigna to engage in a scheme in which Cigna denied benefits owed to Plaintiff.

## IV. General Allegations

### A.     *Background as to Self-Funded Healthcare Benefit Plans Governed by ERISA*

16.     Generally speaking, throughout America, individuals not eligible for Medicare or Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer.  Those employers can provide health insurance on either a fully- insured or self-funded basis.  When an employer provides fully-insured health insurance, the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds.

17.     By contrast, when health insurance is offered by an employer on a self-funded basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose.  The resulting fund enjoys certain tax breaks, and is funded by the employer and/or employees who contribute premium payments.  The health care claims of the enrolled employees and their dependents are then paid with the finances of the fund.

18.     Unless exempted, self-funded health benefit plans are governed and regulated

by the Employee Retirement Income Security Act of 1974. Pursuant to ERISA, by statute, a self-funded health benefit plan must set forth in a written official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.

19.     Often times, an employer who elects to have a self-funded health plan contracts with a third party commercial insurance company to oversee the claims processing and other administrative services. The employer and the third party commercial insurance company, also known as the Third Party Administrator ("TPA"), enter into an Administrative Services Only ("ASO") contract or agreement.

20.     Cigna is a third party commercial insurance company that provides TPA administrative services to various self-funded plans under ASO contracts. In exchange for the payment of fees, Cigna provides claims processing and other administrative services to the plans, as well as access to Cigna's network of providers. Cigna's network of providers are considered in-network because they enter into Preferred Provider Organization ("PPO") contracts with Cigna.

21.     Pursuant to the PPO contracts between Cigna and its in-network providers, Cigna's in-network providers agree to accept negotiated lower amounts for their services. In-network providers agree to the lower rates in exchange for a higher volume of patients that results from being part of Cigna's published managed care network. Thus, when a plan beneficiary receives health care services from an in-network provider, the Plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract. Critically, pursuant to the PPO contract between the in-network provider and Cigna, the in-network provider agreed to accept the lower negotiated rate as payment in full for the service. That is, under the PPO contract with Cigna, the in-network provider agreed to have no recourse against the patient for any difference in

7

amount between the provider's normal charge for the procedure and the negotiated lower rate. In other words, by contract, the in-network provider is precluded from ever balance-billing the patient.[1]

22.     Since the amount owed by the Plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with Cigna, and because the PPO contract also precludes the in-network provider from balance-billing the patient, the in-network provider's request for payment from the Plan is deemed to be governed by the PPO contract, and is therefor not considered an ERISA claim for benefits.[2]

23.     By contrast, an out-of-network provider has no contract with Cigna or the Plan, and is not bound to accept the same lower negotiated rates set forth by any PPO contract or fee schedule.  Since there is no contract between the out-of-network provider and Cigna or the Plan, the out-of-network provider is free to "balance bill" the patient for any amounts unpaid by the Plan.  This also means that the patient may be pursued and held personally liable by the out-of-network provider for any amounts unpaid by the Plan.

24.     Plaintiff is an out-of-network provider that has no contract with Cigna or the Plan. As a non-participating provider, Plaintiff is not subject to any limitations or agreements contained in any PPO contract.

25.     DPWN and DHL are employers that sponsors and administers the DHL

---

[1] Balance billing, sometimes also called extra billing, is the industry practice of billing a patient for the difference between what the patient's health insurance chooses to reimburse and what the provider chooses to charge.

[2] According to FAQ A-8 of the United States Department of Labor Employee Benefits Administration's Frequently Asked Questions About the Benefit Claims Procedure Regulation, ERISA does not apply to in-network provider's claims for reimbursement when the provider has no recourse against the claimant for the amount in whole or in part not paid by the insurer or managed care organization. *See* http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html. (ERISA "does not apply to requests by health care providers for payments due them – rather than due the claimant – in accordance with contractual arrangements between the provider and an insurer or managed care organization, where the provider has no recourse against the claimant for amounts, in whole or in part, not paid by the insurer or managed care organization.")

Worldwide Express Health Plan, an ERISA governed, self-funded welfare benefit plan created to provide benefits to subscribed DPWN and DHL employees and their enrolled dependents (collectively "plan beneficiaries"). In its 2013 plan year, the Plan had approximately 5,721 individual active plan beneficiaries.

26.     Branded as a "Well Select" and "Open Access Plus" medical plan, the Plan promises its beneficiaries the freedom to receive and obtain reimbursement for health care services from his or her provider of choice. That is, the medical benefits covered by the Plan includes coverage for health care services from in-network *and* out-of-network providers, permitting the Plan's beneficiaries to seek treatment from a doctor or facility of his or her choice.

27.     Under the terms of the Plan, the Plan is required to promptly pay benefits for out-of-network services based upon the maximum reimbursable charge for that service in the same geographic area. Whenever the Plan pays less than 100% of an out-of-network provider's claim, the Plan's failure or refusal to pay the full amount of the out-of-network provider's charges is deemed an adverse benefit determination under ERISA.[3]

**B.     *Together with Cigna Defendants Owe Fiduciary Duties to the Plan's Beneficiaries***

28.     Under ERISA, a self-funded health benefit plan must set forth in a written official plan document or plan instrument specific details regarding the Plan, such as the terms of eligibility for enrollees, the types of benefits covered, and more. Pursuant to the public policy set forth by

---

[3] *See* FAQ C-12 of the United States Department of Labor Employee Benefits Administration's Frequently Asked Questions About the Benefit Claims Procedure Regulation, published online at http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html.     (Under ERISA, an adverse benefit determination generally includes any denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit. In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimant is nonetheless receiving less than full reimbursement of the submitted expenses, and is treated as an adverse benefit determination.)

PLAINTIFF'S ORIGINAL COMPLAINT

ERISA, as a self-funded welfare benefit plan, the Plan shall be interpreted and implemented solely in the best interests of the Plan's beneficiaries *for the exclusive purpose of providing benefits for them.*[4]

29.     DHL serves as the Plan Sponsor and Plan Administrator for the Plan.  Specifically, DPWN and DHL employ individual Robert Whitaker ("Mr. Whitaker") who holds the position of Treasurer for DPWN and DHL.  Through his employment and position with DPWN and DHL, Mr. Whitaker is charged with the responsibilities and duties of a Plan Administrator for the Plan.

30.     Thus, under ERISA, Defendants serve as trustee-like fiduciaries of the Plan's beneficiaries.  As fiduciaries, Defendants must act in accordance with the Plan's governing plan documents and solely in the interests of the Plan's beneficiaries for the exclusive purpose of providing benefits to them.  Importantly, a fiduciary of an ERISA plan is forbidden to "deal with the assets of the plan in his own interest" and "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect" transfer or lending of plan assets benefitting a co-fiduciary or other party in interest.[5]

31.     Together, Defendants and Cigna, the Plan's designated TPA and Defendants' agent, serve as co-fiduciaries for the Plan.   Defendants knowingly empowered Cigna with discretionary authority and control over the claims administration of the Plan, which includes the adjudication of medical claims (along with full and fair review of appealed claims), determinations of coverage and reimbursements, and the disposition of the Plan's assets.

### C.     *Relying Upon Defendants' Representations as to Coverage, Plaintiff Provided Medically Necessary Services to Beneficiaries of the Plan*

---

[4] *See* 29 USC § 1104(a)(1)(A).
[5] *See* 29 USC § 1106(a)(1).

32.    The Plan purports to provide out-of-network benefits to its beneficiaries.    Branded as an "Open Access Plus" and "Well Select" medical plan, the Plan promises its beneficiaries the freedom to receive and obtain reimbursement for health care services from his or her provider of choice, including services obtained from out-of-network providers.    Under the terms of the Plan, the Plan must promptly pay benefits for out-of-network services based upon the maximum reimbursable charge for that service in the same geographic area.

33.    Plaintiff is a non-participating, out-of-network health care provider.    Plaintiff has no contract with Cigna, or with the Plan.

34.    Plaintiff provided health care services to Patient I.Y. #U2440518702 ("the Patient") on October 15, 2015, a beneficiary of the Plan.

353.    The Assignor-Patient also signed an Assignment of Benefits and Designation of Authorized Benefits ("AOB") stating:

> *In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand and agree that I am legally responsible for any and all actual total charges expressly authorized by me regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.*
>
> *I hereby convey to the above named provider(s), to the full extent permissible under the laws, including but not limited to*

*ERISA*
*§502(a)(1)(B) and §502(a)(3), under any applicable employee group health plan(s), insurance policies or public policies, any benefit claim, liability or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s), with respect to any and all medical expenses legally incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the laws to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses. Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original.   I have read and fully understand this agreement.*

36.     Through the AOB's, the Assignor-Patient assigned to Plaintiff all relevant rights hereunder, including:  the right to be paid directly by the Plan, the right to challenge and appeal the amount of reimbursement, the right to pursue litigation including all ERISA causes of action (including breach of fiduciary claims), and the right to receive all relevant plan documents (Summary Plan Descriptions, Master Plan Documents, Claim Files, Administrative Files, Financial Reports, among other documents and information) as if Plaintiff was the member, participant, or beneficiary of the Plan.   This assignment is unrestricted and unrevoked and it serves to place Plaintiff in the same position as the Assignor-Patient.  Through these AOB's, Plaintiff serves as the Assignor-Patients' authorized representative, and therefore qualifies as a claimant under the Patient Protection and Affordable Care Act, 29 CFR § 2590.715.

12

37.    Additionally, before providing any medically necessary healthcare services to the Assignor-Patient, as part of Plaintiff's routine and usual practice, Plaintiff verified that the services to be provided were covered under the Plan. Plaintiff followed the specific instructions indicated on the Assignor-Patient's insurance cards regarding insurance verification and claims submission. Through the verification process, Defendants affirmatively represented to Plaintiff that the Assignor-Patient was covered under the Plan, had applicable out-of-network benefits, and that the expected medical procedure was a covered service.

38.    Reasonably relying upon Defendants' representations, Plaintiff provided the medically necessary health care services to the Assignor-Patients and then timely submitted the claim for payment in accordance with the procedures established in the Plan. The submitted claim reflected billed charges incurred by the Patient to total $200,355.00.

### D.    Defendants' Wrongful Denial of Plaintiff's Claim.

39.    Whenever a claim is processed by an insurance company, the insurance company issues an Explanation of Benefits ("EOB") to the Provider, which is sometimes called the Provider Remittance Advice ("PRA"). The EPRA is an electronic version of the EOB/PRA that is created from the data transmitted with the Electronic Remittance Advice ("ERA" or HIPAA 835) transaction. The ERA or HIPAA 835 is the standard transaction mandated by the Health Insurance Portability and Accountability Act (HIPAA) which utilizes various claim adjustment reason codes ("CARC") or remittance advice remark codes ("RARC") to communicate information relating to the insurance carrier's processing and payment of the claim. In industry practice the EPRA serves as an electronic version of the Provider Explanation of Benefits that can be promptly accessed to obtain details of a particular claim in order to trace, record, and auto-post claim payments into the provider's system.

13

40.     Following Plaintiff's submission of the Assignor-Patient's claim, Defendants refused to pay any amounts to Plaintiff.  Rather than issue payment for the benefits owed, Defendants proceeded to, through a complete claim denial, enable, authorize, ratify, or otherwise engage in, Cigna's scheme to conceal misappropriation of plan funds and other prohibited self-dealing misconduct.

41. On November 28, 2015, Plaintiff received a HIPAA 835 which reflected the complete denial and Defendants determination that the Patient owed $0.00 to Plaintiff.  The 835 reflected a CARC for this complete denial as "Payor Initiated Reductions."  This adjustment code is used when, in the opinion of Defendants, the adjustment, unilaterally decided on by Defendants and Cigna, is not the responsibility of the patient.  However, no supporting documentation was ever offered to Plaintiff to help explain this complete denial of benefits for services which were preauthorized by Defendants themselves.  In reality, if the claim was completely denied, Plaintiff is entitled to bill the patient for the remainder of outstanding charges, i.e. $200,355.00.

42.     However, the truth is the claim was payable under the terms of the Plan.  Due to the complete denial, Plaintiff immediately determined that this claim was processed incorrectly and initiated an ERISA Level 1 Appeal so that Defendants and Cigna could rectify their mistake. In addition to the written Level 1 Appeal, which was sent on December 8, 2015, Plaintiff called Cigna to inquire about the claim.  At that time, on December 10, 2015, Cigna verbally agreed to reprocess the claim.

43.     Despite Plaintiff sending Cigna and Defendants an Assignment of Benefits, Cigna directed its Level 1 Appeal decision to the Patient directly.  To this day, Plaintiff has not received a response to its Level 1 Appeal.  According to the explanation of benefits that was sent to the Patient, it appeared that all of the charges were denied in error and the total amount of the charges

covered was $200,355.00.  However, this amount was never paid to Plaintiff, but was kept by Cigna.

44.  Two weeks later, Plaintiff received a "repricing agreement" regarding the Patient's October 15, 2015 procedure.  This "repricing agreement" was from a company named "Viant" and stated that Cigna had determined the allowable amount for the procedure was $9,736.42, contradicting the EOB received from Cigna. Plaintiff did not receive any communication from Defendants or Cigna that indicated the claim had been reprocessed.  This correspondence indicated that Cigna was willing to increase the "allowable amount" for the claim to $29,200.00. Plaintiff never responded to this correspondence from Viant as Cigna had not provided any indication of who Viant was or if they indeed had authorization from Cigna to access HIPAA-protected information or to act on Cigna's behalf.  Furthermore, Plaintiff never received any indication from Cigna that it had reprocessed the claim and the documentation to support the determination, as requested by Plaintiff and required by Federal law, was never given to Plaintiff. Because Plaintiff never received any of the required information, Plaintiff did not communicate with Viant.

45.  After repeated requests, Plaintiff had not received any communication from Cigna or Defendants regarding this claim, and Plaintiff asked the Department of Labor for assistance in looking into the issue.  After all, according to ERISA, once the Appeal was requested, Defendants had thirty (30) days to respond to Plaintiff.  In an effort to resolve the issue without Court intervention Plaintiff filed a complaint with the Department of Labor on February 3, 2016, and Plaintiff notified Defendants and Cigna of the complaint and requested a second Appeal even though Defendants had not responded to the first Appeal as required by Federal law.  This correspondence asked Defendants and Cigna again to process the claim according to the Plan,

and to also provide all documentation supporting its decisions.

46.     The next day, Plaintiff received correspondence from a company named "Stratose"
entitled "Agreement for Negotiated Settlement of Charges." This correspondence looked similar
to the one received from Viant but offered a "negotiated charge" of $12,100.01. Again, Plaintiff
received nothing from Cigna or Defendants indicating if the claim had been processed or who
Viant was and if they had authority to discuss the claim with Plaintiff.

47.     Finally, on February 15, 2016, received a check for $7,733.36 and a new ERA/
HIPAA 835, the first indication that the claim had been reprocessed as promised on December
10, 2015. The ERA indicated that the previous denial of benefits had been reversed and the ERA
issued a new explanation of the $7,733.36 payment.[6]

48.     According to this ERA, Cigna, Defendants' agent and co-fiduciary, applied a
"CO" "Contractual Obligation" codes to mask the claim as being subject to a false, phantom
Preferred Provider Organization ("PPO") type contract, even though no such contract truly
exists.  Further, Cigna affirmatively calculated the patient's responsibility, deductible, and
coinsurance amounts as "9,976.41" and asserted that the patient may not be billed for any
amount over this by Plaintiff.

49.     Notably, the EPRAs never disputed the reasonableness of the amounts charged
by Plaintiff for the medical services, signifying Defendants' acceptance of the fees charged for
each procedure.   In other words, Defendants did not apply any price reductions or discounts,
affirmatively agreeing to 100% of the billed charges. Thus, it can be concluded that rather than

---

[6] Oddly enough, Plaintiff received yet another correspondence from Stratose offering to settle the claim for
$22,890.00.  This begs the questions, "Why would Cigna, through a third-party, offer to pay more than they are
obligated to pay?" The truth is that this is another part of Cigna's scheme to induce beneficiaries into settling for
less money than they are entitled to as part of "cost savings."  Unfortunately, the beneficiaries of the Plan pay for
this in the end.

PLAINTIFF'S ORIGINAL COMPLAINT

withdrawing a discounted amount, Cigna withdrew the total amounts, an approximate sum of $200,355.00, from the Plan's benefits account under the guise that it would issue payment to this provider.

50.     Following Cigna's withdrawals of the amounts from the Plan's benefits account, Defendants implemented Cigna's "fee-forgiveness" protocol in order to falsely deny valid benefits claims. The "fee-forgiveness" protocol is simply a wrongful denial of benefits through misleading EOBs.

51.     Defendants not only promised to provide out-of-network benefits to their employees and their dependents, Defendants charged and collected premiums from them. Unfortunately, the out-of-network benefits promised to beneficiary of the Plan were apparently fictional, as Defendants initially paid *nothing* to the Assignor-Patient's out-of-network provider and later paid a fraction of the billed charges. Instead of paying the provider who has medically treated their plan beneficiary, Defendants seemingly enable and allow their agent and co-fiduciary Cigna to unlawfully use the plan funds to pay itself fundamentally unfair amounts.  Meanwhile, Defendants seek to unlawfully punish and penalize their plan beneficiary for electing to use their promised out-of-network benefits by wrongfully refusing to pay for their out-of-network claims.

### E.     Defendants Ignored Plaintiff's Numerous ERISA Appeals Alerting Them of Cigna's Misconduct, and Improperly Denied Plaintiff's Repeated Requests for Plan Documents and Full and Fair Review.

52.     Following receipt of the wrongful denial of benefits issued by Defendants, Plaintiff timely lodged a Level 1 ERISA Appeal challenging the adverse benefit determination.

53.     In the Level 1 Appeal submitted, Plaintiff challenged Defendants' bogus denial bases, showing that the Assignor-Patient was, in fact, obligated to pay the charges in question.

54.     Additionally, with the Level 1 Appeal, Plaintiff requested plan documents,

including the Plan's Summary Plan Description (SPD), the Summary of Benefits and Coverage (SBC), the final or master governing documents, the Plan's Form 5500, the complete administrative file, *and* any documents that would support Defendants' complete denial of benefits.

55.    As a result of Defendants' continuing arbitrary and wrongful denial of benefits, Plaintiff lodged another Appeal to Defendants and Cigna, requesting a full and fair review of every claim, a copy of the entire claim file, a copy of the Summary Plan Description, the IRS Form 5500, the master governing plan documents, and any documentation which would support their adverse benefit determination.

56.    Following Plaintiff's Level 2 Appeal, Defendants still failed and refused to provide full and fair *de novo* reviews of the Assignor-Patient's claim.   As they did before, Defendants did not directly respond to Plaintiff.   Defendants continued to refuse to take any corrective action. Defendants maintained and upheld their adverse benefits determinations arbitrarily and capriciously.   Plaintiff again tried to obtain the precise, ERISA- compliant reasons for Defendants' denial of Plaintiff's claim, but to no avail.   Meanwhile, Cigna misappropriated and paid to itself the amounts it withdrew from the Plan's benefits accounts for Plaintiff's claim.

57.    Even after Plaintiff filed a complaint with the United States Department of Labor, giving Defendants actual knowledge of details as to their co-fiduciary's likely embezzlement scheme that continues to harm their Plan beneficiaries through ongoing wrongful denials of benefits and usurping of plan funds, Defendants refused to independently conduct their own investigation.   Alarmingly, despite explicit warnings as to their own co-fiduciary liability, Defendants imprudently forwarded Plaintiff's Appeals to Cigna, the very perpetrator of the

suspected misconduct.  Defendants continued to refuse to exercise their discretionary authority, and continued to woefully maintain deference to Cigna.

58.     In fact, on March 15, 2016, in spite of the obvious conflict of interest between Cigna and Defendants, Defendants enlisted Cigna to issue a written response to Plaintiff's detailed Level 2 Appeal *on behalf of the Plan*.  Critically, in that letter, Defendants and Cigna utterly failed to deny or dispute that Plaintiff's out-of-network claims were falsely processed as "CO" PPO, payor initiated discount, or repricing claims.  Further, Defendants and Cigna utterly failed to deny or dispute that Cigna paid itself with funds from the plan for Plaintiff's submitted but unpaid claims. Tellingly, while Cigna's letter claimed to "reject" Plaintiff's contentions, Cigna wholly failed to present any facts or financial accounting records that challenged the suspicions of misconduct asserted.

59.     Plaintiff has fully exhausted all administrative remedies under the Plan, having submitted numerous appeals to Defendants and Cigna, the Plan's TPA, by United States Mail, certified with return receipt requested.  Additionally, through written correspondence from Cigna, Defendants confirmed that any further appeals from Plaintiff would be futile, and have expressly conceded that Plaintiff has exhausted all of its administrative remedies and has the right to institute judicial action to redress the wrongs complained of in this lawsuit.

### F.     The Plan's Fiduciaries Together Engage in a Scheme to Embezzle Plan Funds at the Expense of Beneficiaries

60.     Upon information and belief, the facts presented herein, and in breach of their fiduciary duties, Defendants encouraged, authorized, assisted, and enabled Cigna, Defendants' designated agent and co-fiduciary, to unjustly enrich itself by misappropriating the Plan's assets at the expense of the Plan's beneficiary.  Despite several requests and extensive effort by Plaintiff, Defendants have not provided any documentation to disprove these allegations, even

though Defendants are legally required to provide such documentation under ERISA.

61.    Specifically, in breach of their fiduciary duties, Defendants and Cigna engaged in a course of conduct which allowed Cigna to conceal plan fund withdrawals as false "contractual obligation" benefits payments that, in truth, were never actually paid to Plaintiff, but were seemingly embezzled and wrongfully retained by Cigna.  Alternatively, Defendants and Cigna attempted to conceal plan fund withdrawals as "payor initiated reductions" or "ontractual obligations", in violation of ERISA, authorizing Defendants to unilaterally withhold funds which legally belong to the Plan beneficiary.

62.    In processing the claim submitted by Plaintiff, an out-of-network, non-participating provider, Cigna utilized particular CARC/RARC codes to mask each submitted out-of-network claim as being subject to initially 1) a "PI" "Payor Initiated" discount, even though Plaintiff obtained preauthorization and finally 2) a false, sham PPO type contract.  In the end, Cigna mischaracterized each billed charge submitted by Plaintiff as being subject to a "CO" "Contractual Obligation," even though it is indisputable that no such contract between this provider and Cigna exists.

63.    The deception of processing the claim as subject to a fake PPO contract is further shown by Cigna's calculation of the patient's responsibility at "9,976.41" and the assertion that the patient may not be billed for any of the amounts charged.

These representations falsely suggest that either:  1) 100% of the billed charges were paid by the plan to the provider, or 2) the charges were subject to some contractual discount (i.e. PPO contract or repricing discount).  Neither is true.

64.    Collectively, all of these codes deliver the false message that the patient's claim was either 1) subject to a "payor initiated" discount for services that were preauthorized or 2)

governed by a PPO contract that prohibited this provider from balance-billing the patient, when in truth, the patient remains personally liable for any amounts charged but not paid by the Plan. These codes serve as trick signals meant to conceal this out-of-network provider's claim in order to allow Cigna to withdraw the billed amounts from the Plan's benefits account, hiding the transfer of plan funds among the other withdrawals from the Plan that were truly subject to a PPO or re-pricing agreement.

65.     Importantly, even though the amounts taken by Cigna were never actually paid to the provider, Cigna failed to return the withdrawn funds to the Plan within the sixty-day time period mandated by the Department of Labor. Rather, Cigna ultimately embezzled and kept the funds by claiming the amounts as its own compensation for generating "savings" through provider negotiations - negotiations that never actually occurred. All in all, Defendants' and Cigna's joint scheme of masking plan fund withdrawals under a fabricated "payor initiated" discount and finally PPO contract, then profiting through "savings" generated by false denials of valid claims, has potentially resulted in an even grander web of tax fraud, as it is probable that the amounts reported by Defendants as non-taxable paid "benefits claims" in their Form 5500 Tax Filings were inaccurate.

66.     Together with Cigna, Defendants knowingly and systematically violated ERISA regulations that statutorily forbid self-dealing transactions of a fiduciary. Indeed, despite the obvious conflict of interest, Defendants agreed to compensate Cigna based upon savings or recovery that Cigna generates for the Plan by either denying or underpaying the claims submitted by providers. Thus, while Defendants endow Cigna with discretionary authority over the Plan, they also foolishly empower Cigna with a compensation structure that rewards Cigna for denying or underpaying claims. In other words, contrary to their fiduciary duties owed to the Plan's

beneficiaries, Defendants contracted with Cigna in a manner that incentivizes Cigna to make benefits determinations not based upon the true terms of the Plan, but rather, based upon keeping the "savings" as high as possible, in order to maximize profit to Cigna. The harm to plan beneficiaries is even further compounded by Defendants' failure to track or confirm the legitimacy of the vague and mysterious "savings" declared by Cigna when Cigna pays itself with plan funds.

## V. CLAIMS

### A. Claims under § 502(a) of ERISA, 29 U.S.C.§ 1132(a)

67.    Plaintiff incorporates and realleges the allegations set forth above.

68.    Plaintiff has assignments of benefits from the Assignor-Patient who is covered under the Plan. The assignment of benefits that Plaintiff received from the Assignor-Patient confers upon Plaintiff the status of a "beneficiary" under § 502(a) of ERISA, 29 U.S.C. § 1132(a). As the beneficiary, Plaintiff is entitled to recover benefits due to it and/or to the patient under the terms of the Plan and applicable law, including (but not limited to) § 502(a)(1)(B) of ERISA; and to pursue equitable relief under applicable law, including (but not limited to) § 502(a)(3) of ERISA.

69.    Plan Administrator Robert Whitaker, Treasurer for DPWN and DHL, and his employers DPWN and DHL, are liable to Plaintiff under § 502(a) of ERISA, 29 U.S.C. §1132(a), for violations of ERISA and the terms of the Plan, including (but not limited to) the following:

    a.  In violation of ERISA, Defendants knowingly and willfully failed to make payment of benefits to Plaintiff and/or to Assignor-Patient, as required under the terms of the Plan and applicable law, as described herein;

    b.  In violation of ERISA, Defendants knowingly and willfully failed to provide the

beneficiary with a "full and fair review" concerning denial of claims, as required by 29 U.S.C. § 1133(2);

c. In violation of ERISA, Defendants wrongfully entered into unlawful arrangements with Cigna in a manner that encourages false denial of benefits based upon a compensation model that maximizes profit to Cigna resulting from vague "savings" achieved through wrongful denial of claims rather than based upon the terms of the plans; and

d. In violation of ERISA, Defendants violated their fiduciary duties, and despite knowledge of Cigna's probable embezzlement of plan funds, Defendants refused to take corrective actions, and continued to authorize, encourage, enable, and empower Cigna to continue embezzling plan funds.

70.    Plaintiff has suffered damage as a result of Defendants' violations of ERISA. Plaintiff is entitled to monetary damages and/or restitution from Defendants as well as other declaratory and injunctive relief related to the enforcement of the plan terms. Defendants are liable to Plaintiff for unpaid benefits, interest, attorneys' fees, and other penalties as this Court deems just, including the issuance of appropriate declaratory and injunctive relief against Defendants and Defendants' removal as fiduciaries.

**B.    *Breach of Fiduciary Duty and Co-Fiduciary Liability***

71.    Plaintiff incorporates and realleges the allegations set forth above.

72.    ERISA declares that the primary responsibility of fiduciaries is to run the plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses.  Fiduciaries must act prudently and must follow the terms of plan documents to the extent that the plan terms are consistent with ERISA. They also must avoid

conflicts of interest. In other words, fiduciaries may not engage in transactions on behalf of the plan that benefit parties related to the plan, such as other fiduciaries, services providers, or the plan sponsor.

73.     Defendants have continuously ignored and breached their fiduciary duties. Despite actual knowledge of Cigna's misconduct, and the glaring conflict of interest between them as ERISA co-fiduciaries under 29 U.S.C. §1105, Defendants categorically rejected the standards of reason and prudence required of them, and instead, continued to enable, ratify and join Cigna in engaging in misconduct harmful to the plan beneficiary. As a result of Defendants' utter failure to take any corrective actions and willful refusal to pay the benefits owed by the Plan, the Assignor-Patient (beneficiary of the Plan) is left personally exposed to financial liability for their unpaid medical bills.

74.     By knowingly and willfully making, approving and upholding these adverse benefit claims determinations without valid reasons to support them, and by failing to avoid self-dealing transactions prohibited by ERISA, Defendants violated their fiduciary obligations under ERISA.

75.     Pursuant to ERISA §502(a)(3) and 29 U.S.C. §1132(a)(3), Plaintiff, as assignee of the rights of the Assignor-Patient, asserts that Defendants breached their fiduciary duties to the Plaintiff in connection with the subject claims.

76.     In their capacity as Plan Administrator and Plan Sponsor, DPWN, DHL, and Robert Whitaker are fiduciaries of Plaintiff's because Plaintiff, as a legitimate assignee of the Assignor-Patient's rights, stands in the same place as each patient in connection with the coverages and other benefits and rights under the Plan, as ERISA contemplates and defines such terms.

77.     Further, as fiduciaries, Defendants owe the beneficiaries of the Plan a duty

24

of loyalty, defined by ERISA § 406, 29 U.S.C. §1106, as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Contrary to their fiduciary duty of loyalty under ERISA, Defendants knowingly entered into an arrangement with Cigna which encourages and promotes co-fiduciary self-dealing misconduct by compensating Cigna based upon savings from reduced benefits payments. Such an arrangement results in an inherent conflict of interest between Cigna's desire to maximize profit by falsely denying otherwise claims and Defendants' fiduciary obligation to make payments in accordance with the terms of the Plan. Further, such an arrangement results in excessive payments to Cigna that are fundamentally unfair.

79.    Despite knowledge of Cigna's overall embezzlement of plan funds, self-dealing misconduct, and invalid denials of benefits, Defendants enabled, approved, ratified, and otherwise failed to remedy the known breaches of duty by its co-fiduciary.

79.    Defendants are liable to Plaintiff for the violations of fiduciary duty described herein and for violations of its duties as a co-fiduciary under 29 U.S.C. §1105. Plaintiff has been damaged and continues to suffer damage as a direct and proximate cause of Defendants' wrongful conduct described herein. Plaintiff is entitled to damages, equitable relief (including, but not limited to surcharge), and injunctive relief, including Defendants' removals as breaching fiduciaries and prohibition from ever serving as a plan fiduciary under ERISA §502(a)(2) and 29 U.S.C. §1132(a)(2).

### C.    Failure to Provide Full and Fair Review

80.    Plaintiff incorporates and realleges the allegations set forth above.

81.    DPWN, DHL, and its employee Robert Whitaker each qualify as the "plan administrator" within the meaning of that term under ERISA. As such, Plaintiff is entitled to

assert a claim for relief under 29 U.S.C. §1132(a)(3).

82.     Although Defendants were obligated to do so, Defendants failed and refused to provide a "full and fair review" to Plaintiff, on their own and by and through their agent and co- fiduciary Cigna, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. §1133 and the regulations promulgated under ERISA. Plaintiff requested appeals at least twice for the submitted claim and exhausted all of its administrative remedies under the Plan before bringing this lawsuit. Instead of providing Plaintiff a full and fair review as required by ERISA, Defendants responded through form letters issued by Cigna that merely reiterated its adverse benefits determination and offered no meaningful explanation or supporting documents.

83.     Defendants' misconduct recited above was the direct and proximate cause of Plaintiff's harm.

### D.     Failure to Provide Requested and Required Documentation

84.     Plaintiff incorporates and realleges the allegations set forth above.

85.     Defendants have not provided the following requested documents, which ERISA requires it to produce to Plaintiff upon request: a complete and accurate master governing plan document, a complete and accurate SPD, the complete administrative claim file, and all documents showing the actual basis for the adverse benefit determination and the methodology used in applying that basis and making that determination.

86.     Defendants' failure to comply with Plaintiff's request for information pursuant to 29 U.S.C. §1132(c)(1)(B) provides a civil penalty/sanction in the amount of $110.00 per day for such failure or refusal to provide the requested documents and information and Plaintiff is entitled to receive this sanction against Defendants, in addition to an order from this Honorable Court compelling Defendants to produce the requested documents.

### E.    *Negligent Misrepresentation*

87.    Plaintiff incorporates and realleges the allegations set forth above.

88.    Defendants are liable for the negligent misrepresentations they made to Assignor-Patient and to Plaintiff.

89.    Plaintiff reasonably and justifiably relied upon the representations Defendants made in the course of its business and in the transaction in which it had a pecuniary interest. Defendants' representations supplied false information for the guidance to Plaintiff in its business, and Defendants did not exercise reasonable care or competence in obtaining or communicating the information. The negligent misrepresentations included the representations by Defendants, or its agents, that the patient at issue was covered under healthcare policies or plans and further that the medical services to be provided by Plaintiff were likewise covered under the terms of the policy or Plan, as specifically represented by Defendants or its agents via telephone during the insurance verification process referenced in this complaint and as documented by Plaintiff.

90.    In reliance on these false statements, Plaintiff provided health care services to the patient. It was only later, when the claim for services had been denied and not paid at all, that Plaintiff realized that Defendants misrepresented to Plaintiff that the patient was covered under the health care policy or Plan. Further, to the extent that the member/insured is not covered by the applicable health benefits policy or Plan as represented by Defendants to Plaintiff, Defendants made misrepresentations actionable under common law. Plaintiff has been damaged due to reasonable reliance on the negligent misrepresentations of Defendants.

### F.    *Attorney's Fees*

91.    Plaintiff has presented claims to Defendants demanding payment for the value of the services described above. More than 30 days have passed since those demands were made,

27

but Defendant has failed and refused to pay Plaintiff. As a result of Defendants' failures to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action. Plaintiff is therefore entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

92.     Plaintiff is also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party."[7]

## VI.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court issue judgment against Defendants granting Plaintiff the following relief:

1.     Plaintiff's actual damages;

2.     Statutory penalties and surcharges permitted by law;

3.     Attorney's fees, including attorney's fees in the event of an appeal of this lawsuit;

4.     Prejudgment and post-judgment interest at the highest rates permitted by law;

5.     An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA, including, but not limited to, removal of DHL and Robert Whitaker as plan fiduciaries;

6.     Plaintiff's costs of court; and

7.     All other relief, legal and equitable, to which Plaintiff may be justly entitled.

---

[7] 29 U.S.C. §1132(g)(1). *See Hardt v. Reliance Std. Life Insurance. Co.*, 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.*, 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

Respectfully submitted,


*/s/  Clinton A. Quisenberry*
CLINTON QUISENBERRY
State Bar Number 24079168
Federal Bar Number 2783667
Email: Clinton@castsurgical.com
7830 West Grand Parkway South
 Suite 150
Richmond, Texas 77406
832.514.2436 (telephone)
888.975.3297 (facsimile)

ATTORNEY-IN-CHARGE FOR PLAINTIFF
CENTER FOR ADVANCED SURGICAL
TREATMENT, LLC